■ MARSHA STEINBERG, Respondent-Appellant, v MELVIN STEINBERG, Appellant-Respondent. [874 NYS2d 230]—

In an action for a divorce and ancillary relief, the defendant appeals, as limited by his brief, from stated portions of a judgment of the Supreme Court, Nassau County (Ross, J.), dated May 15, 2007, which, after a nonjury trial, inter alia, awarded the plaintiff one half of the marital assets, imputed income to him in the amount of $300,000, awarded the plaintiff nondurational maintenance, and awarded the plaintiff the sum of $200,000 in attorney's fees, and the plaintiff cross-appeals, as limited by her brief, from stated portions of the same judgment which, inter alia, awarded the defendant a separate property interest in his JP Morgan Chase investment account in the amount of $276,724, his interest in Phoenix Capital & Management Company in the amount of $333,333, and a note payable to him by Phoenix Capital & Management Company in the amount of $173,167.

Ordered that the judgment is modified, on the law, the facts, and in the exercise of discretion, (1) by deleting the provisions thereof awarding the defendant a separate property interest in his JP Morgan Chase investment account, his interest in Phoenix Capital & Management Company, and a note payable to him by Phoenix Capital & Management Company, and substituting therefor a provision directing that those assets are marital property subject to equitable distribution, (2) by deleting the provision thereof valuing the defendant's JP Morgan Chase investment account at $276,724, and substituting therefor a provision valuing that account at $351,724.35, (3) by deleting the provision thereof valuing the defendant's interest in Phoenix Capital & Management Company at $333,333, and substituting therefor a provision valuing the defendant's interest in Phoenix Capital & Management Company at $666,666, and (4) by adding a provision thereto valuing the parties' AB Watley account at $6,152.97; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, with costs payable to the plaintiff.

The Supreme Court providently exercised its discretion in dividing the marital assets equally between the parties. When both spouses equally contribute to a marriage of long duration, as here, the division of marital property should be as equal as possible (see Adjmi v Adjmi, 8 AD3d 411, 412-413 [2004]).

The Supreme Court improvidently exercised its discretion in

awarding the defendant a separate property interest with respect to his JP Morgan Chase investment account. "Property acquired during the marriage is presumed to be marital property and the party seeking to overcome such presumption has the burden of proving that the property in dispute is separate property" (*Judson v Judson,* 255 AD2d 656, 657 [1998]; *see D'Angelo v D'Angelo,* 14 AD3d 476, 477 [2005]; *Farag v Farag,* 4 AD3d 502, 503 [2004]). Here, the assets in question were acquired during the marriage, and the defendant's testimony that the source of the assets could be traced to premarital property, unsupported by documentary evidence, was insufficient to overcome the marital presumption (*see D'Angelo v D'Angelo,* 14 AD3d at 477; *Farag v Farag,* 4 AD3d at 503). Also, the defendant's JP Morgan Chase investment account, as well as the parties' AB Watley account, both active assets, should have been valued at $351,724.35 and $6,152.97 respectively, which was their value as of the date of commencement of this action (*see Kirshenbaum v Kirshenbaum,* 203 AD2d 534, 535 [1994]).

The Supreme Court also should have awarded the plaintiff a marital share of Phoenix Capital & Management Company (hereinafter Phoenix) and a note payable to the defendant by Phoenix. Although Phoenix was created two years prior to the parties' marriage, the defendant could not recollect what Phoenix did during the time that preceded the marriage. Instead, the defendant testified that Phoenix acquired an office building two years after the marriage, which was its only asset, and that he and other partners contributed money to Phoenix to manage the property after its purchase. The defendant did not trace the source of his portion of the building's acquisition costs to separate pre-marital funds and likewise did not establish that his actual financial contributions to the building's acquisition and management costs were not derived from marital funds (*D'Angelo v D'Angelo,* 14 AD3d at 477; *Capasso v Capasso,* 119 AD2d 268, 272 [1986]). Marital property is to be viewed broadly, while separate property is to be viewed narrowly (*see Price v Price,* 69 NY2d 8, 15 [1986]; *Saasto v Saasto,* 211 AD2d 708, 709 [1995]). Where, as here, a party fails to trace sources of money claimed to be separate property, a court may treat it as marital property (*see Saasto v Saasto,* 211 AD2d at 709; *Sarafian v Sarafian,* 140 AD2d 801, 804 [1988]; *cf. Lischynsky v Lischynsky,* 120 AD2d 824 [1986]). By extension, the note payable to the defendant as a result of his financial contributions to Phoenix during the marriage should have been considered marital property as well (*see Markopoulos v Markopoulos,* 274 AD2d 457, 458-459 [2000]).

The Supreme Court valued the defendant's one-third interest

in Phoenix at $333,000, based on the defendant's testimony that the property was worth $3 million and was subject to a $2 million mortgage. However, in a prior sworn bank loan application dated May 12, 2005, the defendant estimated the value of the office building to be $4 million. Given the credibility problems that pervade the defendant's testimony generally, the court's discretion in valuing the property should have been exercised in favor of the defendant's most recently documented admission that the property was valued at $4 million. Accordingly, we set the value of the defendant's interest in Phoenix at $666,666 rather than $333,333, subject to the plaintiff's 50% equitable distributive share.

The defendant's contention that the Supreme Court improperly imputed income to him in determining his maintenance obligation is without merit. A court need not rely upon a party's own account of his finances, but may impute income based upon the party's past income or demonstrated future potential earnings (*see Brown v Brown,* 239 AD2d 535 [1997]). Here, the Supreme Court properly imputed an annual income of $300,000 to the defendant given his employment history and his current ownership of a successful, growing business (*see Fruchter v Fruchter* 29 AD3d 942, 943 [2006]; *Sodaro v Sodaro,* 286 AD2d 434, 435 [2001]; *Brown v Brown,* 239 AD2d 535 [1997]).

In light of the plaintiff's age, health, and history of low earnings over the course of a 23-year marriage, the Supreme Court properly found it to be unlikely that she would become self-supporting and, consequently, providently exercised its discretion in awarding her nondurational maintenance (*see Summer v Summer,* 85 NY2d 1014, 1016 [1995]; *Marino v Marino,* 52 AD3d 585 [2008]; *Polizzano v Polizzano,* 2 AD3d 615 [2003]; *Mazzone v Mazzone,* 290 AD2d 495 [2002]).

The Supreme Court providently exercised its discretion in determining that the plaintiff was entitled to attorney's fees in the amount awarded (*see Prichep v Prichep,* 52 AD3d 61, 64 [2008]; *DeCabrera v Cabrera-Rosete,* 70 NY2d 879, 881-882 [1987]).

The parties' remaining contentions are without merit. Skelos, J.P., Dillon, McCarthy and Eng, JJ., concur.